IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JONATHAN DZURISIN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Civil Action No. 14-1303 |
| v. | ) ) ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION

### *I. Introduction*

Pending before this Court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the claims of Jonathan Dzurisin ("Plaintiff" or "Claimant") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381 et. seq. (2012). Plaintiff argues that the decision of the Administrative Law Judge ("ALJ") should be reversed or remanded because the ALJ failed to properly represent Plaintiff's marked-level mental impairment regarding dealing with people in Plaintiff's Mental Residual Functional Capacity ("RFC"). In turn, the description provided to the Vocation Expert ("VE") at the hearing was flawed and, therefore, the opinion provided by the VE is not reliable. For these reasons Plaintiff asserts that the ALJ's decision to deny benefits was not supported by substantial evidence as required by 42 U.S.C. § 405(g) [See generally ECF No. 12].

To the contrary, Defendant argues that the ALJ reviewed all of the evidence to make a proper RFC determination and that despite the functional limitations identified by the ALJ, the

1

Vocational Expert was able to present representative occupations which showed Claimant could perform in a gainful occupation and, therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

For the reasons stated below, the Court will grant the Plaintiff's Motion for Summary Judgment. In turn, the Court will deny the Defendant's Motion for Summary Judgment.

## *II. Procedural History*

On October 17, 2011, Plaintiff filed an application for SSI alleging disability beginning January 1, 2008 (R. at 54). The claim was initially denied on November 29, 2011 (R. at 54). On December 1, 2011, Claimant filed a written request for a hearing (R. at 54). A hearing was held before an Administrative Law Judge on January 3, 2013 (R. at 54). Francis N. Kinley, an impartial Vocational Expert, also appeared during the hearing (R. at 54). The Claimant was represented by Barbara S. Manna, a non-attorney representative (R. at 54).

On January 11, 2013, the ALJ, Brian Wood, determined that Plaintiff was not disabled under Sections 1614(a)(3)(A) of the Social Security Act (R. at 54). The ALJ stated that, "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual function capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule." (R. at 62).

Plaintiff submitted a timely written request for review by the Appeals Council (R. at 25). On July 25, 2014 the Appeals Council denied Plaintiff's request for review thus making the Commissioner's decision final under 42 U.S.C. § 405(g) (R. at 1-6).


2

*III. Medical History*

Plaintiff was born on February 19, 1986. At the time of the hearing Plaintiff was 26 years old and approximately 5'9" tall weighing 160 pounds (R. at 58). Plaintiff has attempted to take the GED exam twice and failed both times because he says he cannot concentrate (R. at 88). He reported he has worked at three welding jobs but he struggled to complete tasks properly and missed work on a chronic basis (R. at 74-77). The ALJ found the Claimant to have the following severe impairments: (1) Bipolar disorder; (2) Attention Deficit Hyperactivity Disorder ("ADHD"); (3) body dismorphic disorder; and (4) irritable bowel syndrome ("IBS") (R. at 56).

Plaintiff reported he receives treatment from Psychiatrist Jasper Payne, Therapist/Psychologist Dr. Bruce Rohrs, and a Primary Care Physician, and a gastroenterologist (R. at 87). Plaintiff reported the following medications: Lamictal for Bipolar, Abilify, Vyvance for ADHD, and Valium for anxiety (R. at 87). Plaintiff stated he is constantly changing medications because he is not doing well on them (R. at 87).

Plaintiff had a doctor appointment at the Primary Care Physicians on August 3, 2007 shortly after moving to the Pittsburgh area. He was seen by Barry Austin, D.O. Dr. Austin reported that Plaintiff appeared underweight, pale, disheveled, and in distress (R. at 492). All vitals were normal and the doctor discussed with Plaintiff weaning down his dose of Ritalin for ADHD (R. at 492-93).

On April 11, 2008 Plaintiff returned to Primary Care Physicians for another office visit, He reported eating better but he was still very stressed (R. at 500). In general, Plaintiff complained of fatigue, malaise, weakness, and nausea (R. at 501). Plaintiff stated he felt anxious and had trouble concentrating on subject matter (R. at 502).

3

Plaintiff attended an April 23, 2008 office visit at Primary Care Physicians for a check-up where a review of all testing showed normal results (R. at 512). An EKG showed no abnormal results (R. at 514-15). Plaintiff was monitored for palpitations for 21 hours on a Holter Monitor with normal results. Despite Plaintiff's stating he had a symptomatic episode it did not correlate with any major abnormality in the data from the testing (R. at 516).

May 21, 2008 Plaintiff attended an office visit at Primary Care Physicians. Plaintiff had usual list of complaints and added epigastric discomfort (R. at 519). Doctor added Nexium to Plaintiff's list of medications (R. at 519).

On January 3, 2009 Plaintiff presented to the Heritage Valley Health System Emergency Department because of nausea, vomiting, and diarrhea all day. He was rehydrated and discharged with instructions for BRAT (bananas, rice, applesauce, and toast) diet (R. at 394). He was prescribed Prilosec (R.at 405).

July 17, 2009 Plaintiff presented to the Heritage Valley Health System Emergency Department because of strong smelling urine and low back pain (R. at 407). Urinalysis was normal and Plaintiff was discharged (R. at 408).

On March 2, 2010 Plaintiff had a gall bladder ultrasound because of elevated bilirubin. It was an unremarkable ultrasound except for minimal intrahepatic biliary dialatation in the left lobe. This was doubtful of any significance (R. at 382).

On March 3, 2010 Plaintiff, once again, visited the Heritage Valley Health System Emergency Department complaining of nausea, vomiting, dry mouth, and back pain. He had slightly elevated bilirubin (R. at 423). Plaintiff was told to follow up with a gastroenterologist (R. at 423).

On May 3, 2012 Plaintiff presented to the Heritage Valley Health System Emergency Room with a three-day history of worsening Gastroesophageal Reflux Disease ("GERD"). He was medicated with a GI cocktail and released with a prescription for Prilosec and told to follow up with his doctor (R. at 617). All other testing produced normal results.

On May 7, 2010 Plaintiff visited Heritage Valley Health System Emergency Department complaining of abdominal pain. He was diagnosed with chronic gastritis and again told to follow up with a gastroenterologist (R. at 440). The doctor prescribed several medications to keep Plaintiff comfortable until he was seen by the specialist (R. at 441).

On June 29, 2010 Plaintiff was referred to Dr. Richard Kim from his primary care physician Dr. Gerald Klug. Plaintiff was experiencing abdominal pain and alternation in bowel movements (R. at 110). Dr. Kim diagnosed Plaintiff with GERD and a component of irritable bowel syndrome ("IBS") (R. at 109). Plaintiff was scheduled for multiple follow up procedures and prescribed Nexium and Lebvid (R. at 109). All procedures performed produced normal results including an endoscopy where the esophagus and stomach were normal (R. at 124).

July 30, 2010, Plaintiff returned to the Heritage Valley Health System Emergency Department complaining of chest pain when breathing and said his teeth hurt (R. at 458). The report indicated Plaintiff's history of digestion issues and weight loss and reported he had an endoscopy 4 days prior to his visit to the ER (R. at 458). Plaintiff's anxiety was noted (R. at 459). Plaintiff was recommended to continue follow up with doctors and testing and was recommended to discontinue ingestion of gluten (R. at 459). During this visit to the ER Plaintiff had a chest x-ray which was unremarkable (R. at 461).

August 24, 2010 Plaintiff underwent a liver sonogram because of elevated liver function. The sonogram was within normal limits (R. at 375).

5

Dr. Klug determined Plaintiff to be temporarily disabled from October 5, 2010 to October 5, 2011 due to malabsorption syndrome and chronic fatigue. Dr. Klug provided a secondary reason of ADHD (R. at 366-67).

October 15, 2010 Plaintiff visited the Heritage Valley Health System Emergency Department complaining of weakness (R. at 475). He was given IV fluids and felt better. Routine blood work was unremarkable (R. at 476).

Plaintiff attended therapy sessions with Crossroads Counseling and Consulting Associates from January 4, 2011 to November 13, 2012. The notes detail his psychological diagnosis and stressors, which include, ADHD, Bipolar, and body dysmorphic syndrome (R. at 649-53). There are no marked limitations reported. He also visited Crossroads from June 1, 2012 to July 12, 2013 (R. at 669-81).

Plaintiff visited the Staunton Outpatient Clinic for therapy from August 1, 2012 to July 3, 2013 (R. at 654-668).

On August 10, 2013 Plaintiff was seen at the Emergency Department of Heritage Valley Health System for complaints of worsening symptoms of IBS and insomnia (R. at 11). Plaintiff was discharged the same day in good/stable condition (R. at 12).

The record contains GAF scores ranging from 50-56 as various times from various providers.[1]

### IV. *Summary of Testimony*

Plaintiff filed for initial claim of disability on October 17, 2011 due to the following conditions: Bipolar2 Disorder, ADD/ADHD, Severe Depression/Anxiety, Severe Chronic

---

[1] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by a clinician to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R). The greater the number the higher the functioning of the individual.

Fatigue/Sleep Disorders, and Attention/Concentration/Focusing Problems (R. at 138). Plaintiff claims he also suffers from malabsorption, GERD, IBS, and Gilbert's Disease (R. at 259). Plaintiff states these conditions affect his ability to: lift, walk, remember, complete tasks, concentrate, understand, and follow instructions (R. at 283). He states he has no trouble with authority or following instructions but he does not do well with routine change or stress (R. at 284). He lists his medications as: Levbid for IBS, Nexium and Prilosec for GERD, Ritalin for ADHD, and Zofran for Nausea (R. at 262). In 2002 he listed Lithium for BiPolar2 and Vyvance for ADHD (R. at 342). Plaintiff worked as a Laborer/Welder from February 2005-2006 and again from June 2007 to September 2007 (R. at 260).

Plaintiff describes a typical day as the following: "I don't do much at all. If anything, maybe watch T.V, if I have to sometimes do laundry and maybe some things around the house if I could, but with me staying focused and stuff like that and my concentration, it's - - I have problems with it." (R. at 82). If Plaintiff feels depressed he won't leave the house (R. at 82). Plaintiff indicates that he helps with the sweeping, dusting, mopping, and general cleaning of the house as well as the cooking (R. at 82-83). Plaintiff also takes his mother shopping and to doctor appointments (R. at 83-84). "When I wake up I eat breakfast, take a shower, check my email, help my mother with things she needs. Then at noon I eat lunch take a nap then wake up. Run a couple of errands/appointments, when needed. I eat dinner, watch T.V. and go to bed." (R. at 278). Plaintiff states he has no social life outside of family (R. at 282).

On December 22, 2010 T. David Newman, Ph.D. performed a Clinical Psychological Disability Evaluation of Plaintiff (R. at 560-64). After interviewing the Plaintiff Dr. Newman diagnosed Plaintiff with ADHD and did not rule out his anxiety and accelerated manner as attributable to high doses of Ritalin (R. at 562). Dr. Newman stated Plaintiff's ability to

7

understand, remember, and carry out instructions are affected by Plaintiff's affliction of ADHD (R. at 562). He also stated that Plaintiff would have marked limitations in making judgments on work-related decisions and interacting with supervisors (R. at 562). In all other areas Dr. Newman assigned moderate or mild limitations or no limitation at all (R. at 562).

On January 5, 2011 Edward Zuckerman, Ph.D. performed a Mental Residual Functional Capacity ("RFC") evaluation of Plaintiff (R. at 565-68). Dr. Zuckerman found no marked limitations for Plaintiff and found five areas of moderate limitation. All other areas of review were not significantly limited.

> The claimant evidences no impairment of memory function secondary to his impairment. He can make simple decisions. He is able to carry out short simple instructions. He would be able to maintain regular attendance and be punctual. Moreover, he would not require special supervision in order to sustain a work routine. He has a history of frequent panic attacks. His ADL's and social skills are functional. He can sustain an ordinary work routine without supervision. Also, he evidences some limitation in dealing with work stresses and public contact. There are no restrictions in his abilities in regard to understanding and memory and adaptation. (R. at 567-68).

The Plaintiff was found to be partially credible (R. at 567). "The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment."(R. at 568)

A Physical RFC was completed on January 6, 2011 by Kevin Sharp. The Physical RFC indicates that Plaintiff can occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds. He can stand or walk about 6 hours in an 8 hour day, he has unlimited pushing and pulling capabilities, and there are no established limitations otherwise (R. at 129-131). The evaluator found claimant's statements of disability to be partially credible (R. at 135).

> [T]he claimant is found not disabled. RFC has been assessed at a medium exertional level of work for the current evaluation. Additional non-exertional restrictions include the mental capacity limited to unskilled work. Examples of

8

jobs within this range include feather shaper, waxer, and masker. These jobs exist in significant numbers in the national economy. (R. at 137)

Ray M Milke, Ph.D. prepared a consultative evaluation on November 17, 2011 using information provided by Dale Noelting, a treating source, and David Newman a non-treating source (R. at 139-142). Dr. Milke found Plaintiff to have mild restrictions on activities of daily living, marked difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (R. at 141). Dr. Milke found Plaintiff to be partially credible because he found Plaintiff's statements were not supported by objective medical evidence (R. at 142). Dr. Milke found Plaintiff to be markedly limited in his ability to understand and remember detailed instructions and in his ability to carry out detailed instructions (R. at 143-144). Dr. Milke also found Plaintiff markedly limited in his ability to interact appropriately with the general public (R. at 144). In all other instances Plaintiff was either moderately limited or not significantly limited.

Also on November 17, 2011 Dale Noelting, Ph.D. (Psychologist) did an initial reconsideration worksheet (R. at 583-90). Dr. Noelting reported no significant limitations but added that Plaintiff had many cancelled appointments and only attended two appointments in the course of five years (R. at 587).

Jasper Kang, MD performed mental (RFC) questionnaire on July 17, 2012 and gave Plaintiff a good prognosis (R. at 600). He noted Plaintiff to be most limited in his ability to perform at a consistent pace and accept instructions from supervisors (R. at 604). He also noted that he would have difficulty understanding, remembering, and carrying out detailed instructions (R. at 604). He did not think he could travel to distant places for work and expected him to be out 4 days a month (R. at 605).

9

A Mental RFC was performed on November 21, 2012 by Bruce Rohrs, Ph.D. Dr. Rohrs stated that Plaintiff is most limited in remembering and carrying out detailed instructions (R. at 642). He also stated that Plaintiff is preoccupied with physical appearance and could not act appropriately with the public (R. at 642). He stated Plaintiff would be off-task 20% of the time and would miss 5 days of work or more every month (R. at 643). Dr. Rohrs believed that Plaintiff would work at 70% capacity of the normal employee (R. at 643).

Another Mental RFC form was completed by Bruce Rohn, Ph.D. on July 3, 2013. The report noted mental diagnoses of Body Dysphoria, Bipolar II, and Attention Deficit Hyperactivity Disorder (R. at 44). According to this report Plaintiff's prognosis was fair (R. at 44). The report noted problems with focus, concentration, and anxiety (R. at 46). Plaintiff would be off-task in a 40 hour a week job 20% of the time; he would likely be absent from work 5 days or more; he would be unable to complete a work day 3 days a month; and he could perform at 70% the average worker (R. at 46). He reported a GAF score of 54. Dr. Rohn does not believe Plaintiff could retain a job in a competitive work setting at 40 hours a week for a continuous period of 6 months (R. at 47).

Another Mental RFC was completed on July 23, 2013 (signature illegible). The report indicated that Plaintiff was seen monthly for bipolar disorder and Plaintiff was given a "guarded prognosis (R. at 40). The report stated that Plaintiff has poor focus and concentration and would be off-task at an 8-hour/ 5 day a week job about 30% of the time (R.at 40). In addition, Plaintiff is likely to be absent approximately 4 days a month and would be unlikely to complete a full day of work 5 days or more a month. Finally, the evaluator felt that Plaintiff could only work at a 60% capacity of an average worker (R. at 42).

At the Hearing, the ALJ posed the following scenario to the VE:

10

Please assume an individual the claimant's age, education, and work experience and that such a person can lift and carry 50 pounds occasionally/25 pounds frequently; he can stand or walk for six hours of an eight-hour work day; he is able to perform simple, routine, repetitive tasks; he requires low-stress work defined as occasional, simple decision making and occasional changes in the work setting; he cannot perform work in a fast-paced production environment; he can have occasional interaction with co-workers and supervisors and no interaction with the public. Would he be able to perform the past welding work? (R. at 90-91)

The VE determined that such a person could not perform welding work but could perform laundry jobs, a general cleaner, and a packing job, all in sufficient numbers in the economy (R. at 91). The ALJ then asked if those jobs would still be available if the person could only have superficial interaction with coworkers 10% of the work day (R. at 91). The VE responded that the interaction would be reduced in industrial jobs and the numbers available decrease but are still present in the economy (R. at 92). The VE also said security jobs, night patrol would be more isolated and 90,000 of those jobs exist nationwide (R.at 92). Finally, the VE testified that if such a person were off-task 20% of the time there would be no jobs available in the national economy (R. at 93).

## V. *Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g)(2012). This Court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to

substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706(1)(F) (2012).

## *VI. Discussion*

Under SSA, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. §§ 416(i)(l); 423(d)(1)(A); 20 C.F.R. § 404.1505 (2012). A person is unable to engage in substantial activity when:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled under SSA, a five-step sequential evaluation process must be applied. See 20 C.F.R. § 404.1520; McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows: At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. See id. at § 404.1520(a)(4)(ii). If the Commissioner determines that the

claimant has a severe impairment, she must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. § 404.1520(a)(4)(iii). If the claimant does not have impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. See id. at § 404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. See id. at § 404.1520(a)(4)(v); see also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). In this case, the Commissioner uses the sequential evaluation process and determines at step (5) that the Plaintiff has not met his burden of proof that he cannot work in some capacity in the national economy. Because the Plaintiff was determined able to perform work that exists in significant numbers in the national economy, he was determined ineligible for benefits by the ALJ (R. at 62).

Plaintiff bears the burden of proving that his RFC or limitations are that which do not allow for any work in the national economy. See Heckler v. Campbell, 461 U.S. 458, 460 (1983); Matthews v. Eldridge, 424 U.S. 319, 336 (1976). Moreover, the ALJ is not required to uncritically accept Plaintiff's complaints. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). The ALJ, as fact finder, has the sole responsibility to weigh a claimant's complaints about his symptoms against the record as a whole. See 20 C.F.R. §§ 404.1529(a), 416.929(a).

With regard to Plaintiff's physical issues of IBS, malabsorption, and GERD there is little to no indication that these physical ailments cause him any limitation with regard to working. The record showed a significant history of emergency room visits for Plaintiff. The records

indicate that he has suffered from gastroenteritis with nausea and vomiting leading to dehydration. Again, these symptoms do not seem to be disabling or limiting with regard to ability to work. In most cases Plaintiff was rehydrated and discharged. All testing revealed normal results. He was prescribed Prilosec and Nexium to control his digestion issues. It is noteworthy that a doctor in the emergency room, where Plaintiff made frequent visits, states that he suspects Plaintiff is anxious perhaps speculating Plaintiff's symptoms may also be anxiety related (R. at 459). Finally, Kevin Sharp's 2011 Physical RFC has little to no limitation on Plaintiff's physical abilities but rather refers to mental limitations.

With regard to Plaintiff's claim of mental disability, Plaintiff has a mental disability diagnosis of: Body Dysphoria, Bipolar II, and Attention Deficit Hyperactivity Disorder. He is prescribed medicine for Bipolar Disorder and ADHD. Doctors also consistently noted that Plaintiff is anxious. At least four evaluators found Plaintiff is most limited, and even markedly limited, in his ability to understand and remember detailed instructions and in his ability to carry out detailed instructions. There are two reports citing marked limitation in his ability to interact with the public. While the VE was able to find a significant number of jobs in the economy that could accommodate Plaintiff's mental limitations, he did find that if a person with those limitations would be off-task 20% of the time there would be no jobs for such a person. It is noteworthy, that the evaluators of the most recent 2012 and two 2013 Mental RFC reports indicated that they would expect Plaintiff to be off-task 20-30% of the time. In addition, there is factual testimony that Plaintiff had difficulty attending work on a regular basis.

Plaintiff argues in his Brief in Support of Summary Judgment that even though the ALJ found a "marked" level of impairment in social functioning in his Paragraph B findings, he did not accurately transpose that into marked level impairment in dealing with people in his RFC

[ECF No. 9 at 7]. Plaintiff claims this error is reversible error. The Third Circuit in a precedential decision, ruled that Paragraph B findings must be accurately portrayed in the RFC. Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004).

The Commissioner responded to Plaintiff's argument that the ALJ considered all the evidence of record in determining Plaintiff's RFC [ECF No. 11 at 15]. Furthermore, "[A] review of the record shows that the ALJ accounted for Plaintiff's functional limitations that were reasonably established by the record both in his RFC finding and the hypothetical question presented to the vocational expert." [ECF No. 11 at 15]. "The ALJ's RFC finding specifically accounts for Plaintiff's marked limitations in this area of functioning by limiting him to no more than occasional interaction with supervisors; no more than superficial interaction with coworkers, where 'superficial' is defined as consisting of approximately 10% of the workday; and no interaction with members of the general public [ECF No. 11 at 15].

We agree with the Commissioner that considering the evidence of record in its entirety, substantial evidence supports the ALJ's determinations which were reflected in his RFC and his scenario to the VE. While two RFC's note marked limitations in social functioning, others do not have the same limitation. In addition, there is testimony by doctors, evaluators, and the Plaintiff, himself, which indicate that Plaintiff is able to socially interact with others on a limited basis. Although the ALJ, perhaps conservatively, stated a Paragraph B finding of marked difficulty in social functioning for Plaintiff, this does not preclude the ALJ from taking all evidence of record into consideration when forming an RFC for the Plaintiff or presenting the VE with a hypothetical scenario for determining potential jobs for Plaintiff. We find that the ALJ properly represented Plaintiff's limitations with regard to social interaction.

Nevertheless, we do not find there is substantial evidence of record to determine that Plaintiff is not disabled. Namely, the VE indicated that a person, with the same limitations as Plaintiff, who would be off-task 20% of the time, would not have any jobs available to him in significant numbers in the national economy. The record contains at least three of the most recent reports indicate that Plaintiff would be off-task 20% of the time or more. The ALJ makes no mention of Plaintiff's ability to stay on-task as would be required despite his limitations. Furthermore, the ALJ does not go through the steps to justify any diminished weight he might be giving to these report. When the medical evidence of record conflicts, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d. Cir 1999). The ALJ did not provide enough information or reasoning in his decision to discount the conclusions that Plaintiff could not perform at a level that by testimony given by the VE would be necessary to obtain work in the economy. Considering this contrary evidence on the record, the Court is unable to determine that there is substantial evidence of record to support the Commissioner's decision that the Plaintiff is not disabled.

## VII. Conclusion

For the foregoing reasons, we conclude that the record lacks substantial evidence supporting the determination that Plaintiff is not mentally disabled. Plaintiff's Motion for Summary Judgment [ECF No. 8], is GRANTED to the extent that it seeks remand to the Commissioner for further proceedings consistent with the Opinion, and otherwise is DENIED. Defendant's Motion for Summary Judgment is DENIED.

An appropriate order will be entered.

Date: March 16, 2015

Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc: counsel of record